### GOODWIN v. CLAYTOR.

(Filed December 13, 1904).

1. EXEMPTIONS—*Lex Fori—Conflict of Laws.*

Exemptions relate only to the remedy, and the right to an exemption is subject to the law of the forum.

2. EXEMPTIONS—*Corporations—Garnishment—Domicile.*

Where a corporation organized in New Jersey, but having no property in that state—the bulk of its property and its principal place of business being in North Carolina—was summoned in North Carolina as garnishee in an action between two residents of Virginia, the exemption laws of Virginia were not applicable.

3. GARNISHMENT—*Process—Service of—The Code, sec. 364.*

Where service of summons was had by publication on a non-resident of the state, and a debt due the defendant was garnisheed, plaintiff did not lose any lien on the debt by taking a judgment against the defendant and the garnishee.

4. GARNISHMENT—*Judgments—Domicile—Jurisdiction—Process.*

In garnishment proceedings against a nonresident defendant, service being had by publication, no jurisdiction is acquired to support a personal judgment against the defendant.

5. GARNISHMENT—*The Code, sec. 364.*

Under the statute, moneys due by a garnishee, or goods in his hands, at the time of appearance and answer, are applicable to the debt, though not earned and due when he was summoned to answer.

6. GARNISHMENT.

A plaintiff in garnishment is, in his relation to the garnishee, substituted merely to the rights of his own debtor, and cannot enforce any greater claim against the garnishee than the debtor himself, if suing, would have been entitled to recover.

7. GARNISHMENT—*Jurisdiction—Foreign Corporations — The Code, sec. 194.*

The courts of this state have jurisdiction to proceed against a foreign corporation in garnishment proceedings in an action brought in the state against its salesman; the cause of action against it and in favor of the salesman having arisen here, and the subject of the action being situated here.

8. EXEMPTIONS—*Garnishment—Domicile—The Code, sec. 493.*

The earnings of a nonresident for personal services for the sixty days next preceding are exempt from seizure in garnishment.

ACTION by G. O. Goodwin against A. B. Claytor and the R. J. Reynolds Tobacco Company, garnishee, heard by *Judge T. A. McNeill* and a jury, at February Term, 1903, of the Superior Court of Forsyth County.

This action was heard upon a case agreed as follows: The action was commenced before a justice of the peace by Goodwin, a resident of the State of Virginia, against Claytor, also a resident of the State of Virginia, for the recovery of $109.67, with interest on $96.01 from January 14, 1903, due

137——15

by judgment.    The indebtedness of Claytor to Goodwin is admitted.    Service of summons was duly had by publication and by garnishment of a debt due from the R. J. Reynolds Tobacco Company to Claytor.    Claytor is an employee of the R. J. Reynolds Tobacco Company in the capacity of traveling salesman, and the money which was attached in the hands of the R. J. Reynolds Tobacco Company was the earnings of Clayton for his personal services, and said earnings accrued within sixty days next preceding the institution of this action, service of garnishment, filing of answer and the order of the justice.    These earnings were used for the support of a family dependent upon him.    It is admitted that the R. J. Reynolds Tobacco Company is a corporation duly chartered and created under and by virtue of the laws of the State of New Jersey and is engaged in the manufacture of tobacco, with its principal place of business and bulk of its property in Winston, N. C., it having no property in New Jersey, save that such office as is required by the laws of New Jersey is located there.    The said company has complied with the laws of North Carolina in reference to foreign corporations of the nature and character of this company.    The contract between Claytor and the company was signed by Claytor in Virginia and returned to Winston by mail.    The preliminary arrangements, however, and the principal points involved in the contract were agreed upon at the office of the company in Winston.    The salary of Claytor is usually paid him by check upon a bank in New York, which is sent to him by mail in Virginia, but occasionally a check is drawn on a bank in Winston and mailed to him in Virginia.    These checks are sent from the office of the company in Winston.    The contract between the company and Claytor does not fix where or how his salary shall be paid.    All services performed and done, under and by virtue of this contract, are performed and done in the States of Virginia and West Virginia, and no part of said

work is done in North Carolina. At the date of the service of the writ of garnishment on the company, it was indebted to Claytor by reason of the contract in the sum of $16.55 for salary and $17.58 expense money, and likewise since the service of the writ of garnishment has become indebted to Claytor up to the date of filing the answer in the sum of $86 for salary and blank dollars for expense money, the expense money being advanced by Claytor and the company reimbursing him for the same upon receiving statement thereof.

The laws of Virginia upon the question of exemptions are as follows: "Section 3630 of The Code of 1887—Every householder residing in this State shall be entitled to hold exempt from levy, seizure, garnishment or sale under any execution, order or process issued on any demand for any debt or liability on contract, his personal and real estate, or either, to be selected by him, including money and debts due him, to the value of not exceeding $2,000. Section 3652—Wages owing to a laboring man being a householder, not exceeding $50 per month, shall also be exempt from distress, liability or garnishment. Section 3656—An injunction may be awarded to enjoin the sale of any property exempt under the provisions of this property, and to prevent the wages exempted by section 3652 from being garnisheed or otherwise collected by an execution creditor." It is admitted that Claytor is a householder, or head of a family within the meaning of the exemption law of the State of Virginia, and it is likewise admitted that he has never had allotted to him any exemption under and by virtue of the laws of that State. This agreed statement of facts is made and signed without prejudice to any rights of either of the interested parties to make any motion or enter any special appearance as in its or his judgment may be deemed advisable.

The Court, upon the case agreed, rendered judgment in

favor of the plaintiff and against both defendant and garnishee for the full amount of his debt and the costs. Defendant and the garnishee excepted and appealed.

*A. H. Eller,* for the plaintiff.
*Glenn, Manly & Hendren,* for the defendants.

WALKER, J., after stating the facts. The counsel of the defendant and of the garnishee, in their able and exhaustive brief, rely on several grounds to defeat the plaintiff's recovery. For convenience, we will change somewhat the order in which they are stated in the brief. It is contended (1) that the debt garnisheed is exempt by the laws of Virginia from garnishment; (2) that if the debt was subject to garnishment at all, any lien acquired by the service of the writ was waived and the garnishee released by taking a general and personal judgment against the defendant and the garnishee instead of taking an order condemning the debt to the payment of the plaintiff's claim; (3) that the judgment is erroneous, as it condemned a debt due after the service of the writ; (4) that the Court was without jurisdiction to proceed against the garnishee for the purpose of condemning the debt due by him, because it is necessary to the possession and rightful exercise of such jurisdiction that three things should occur: (a) The corporation who is the garnishee in this case must have such a residence and agency within the State as renders it amenable to the process of the Court; (b) the principal defendant, who is the plaintiff's debtor, must himself have the right to sue the garnishee, his debtor, in this State for the recovery of the debt; (c) it must appear that the *situs* of the debt is in this State; (5) and lastly, they insist that the earnings of a debtor are exempted from condemnation by the laws of this State. We will consider these contentions in the order thus presented.

The right of exemption under the laws of Virginia cannot

be enforced here. It is well settled that exemption laws have no extra-territorial effect. They are not, in respect to the question now under discussion, a part of the contract, but relate only to the remedy, and the right to an exemption is therefore subject to the law of the forum. Rood on Garnishment, sec. 100; *Railroad v. Sterm,* 174 U. S., 710; *Sexton v. Ins. Co.,* 132 N. C., 3, 60 L. R. A., 615. But there is another decisive answer to this claim of exemption. We have concluded, as will appear hereafter, that the domicile of the corporation, the Reynolds Tobacco Company, is for the purposes of this case in this State, and it nowhere appears that it has any domicile or even an agency in the State of Virginia. Indeed the case shows that, while it was created a corporation in the State of New Jersey, it has no property in that State, but the bulk of its property and its principal place of business are here. For this reason it could not be sued by the defendant Claytor in the State of Virginia for the debt garnisheed in this action, and Claytor therefore could not avail himself of the exemption laws of that State. It is argued that as the plaintiff and the defendant Claytor are residents of Virginia, if Claytor is not allowed his exemption under the laws of that State, the plaintiff will be enabled thereby to evade or "shove by" the law of the domicile of both of them and set it at defiance. How can this be if the plaintiff cannot, by the process of the courts of that State, reach and lay hold of the *res* which is the debt due by the tobacco company? An exemption it would seem can be allowed only in property actually situated in the State where the claim of exemption is asserted and where the property in which it is claimed is subject to the jurisdiction and process of its courts. As we will presently show, the tobacco company had no domicile and could not be served with process there, and, besides, as will also appear hereafter, the *situs* of the debt, if any is required, was here. The argument predi-

cated upon the exemption of the particular debt in Virginia must therefore fail, as no exemption exists.

We do not think that, if the plaintiff acquired any lien on the debt due to the defendant by the tobacco company, he lost it by taking a judgment against the defendant and the garnishee. The judgment against the garnishee seems to be expressly warranted and contemplated by the statute (The Code, sec. 364), and that against the defendant is void as a personal judgment, as the Court could acquire no jurisdiction to proceed against him except in so far as it could by its process levy upon or seize his property, and in this respect the suit is to all intents and purposes in the nature of a proceeding *in rem* and not of one *in personam*. *Cooper v. Reynolds,* 10 Wall, 308; *Pennoyer v. Neff,* 95 U. S., 714; *Winfree v. Bagley,* 102 N. C., 515; *Fisher v. Ins. Co.,* 136 N. C., 217, at this term; *Insurance Co. v. Stratley,* 172 U. S., 602. Nor do we think the judgment was erroneous in that it included a part of the debt which was not earned and due at the time the garnishee was summoned to answer, if it was due when he actually answered and the judgment was rendered. The Code, sec. 364 provides: "When an attachment shall be served on any garnishee in manner aforesaid, it shall be lawful upon his appearance and examination to enter up judgment and award execution for the plaintiff against such garnishee for all sums of money due to the defendant from him, and for effects and estates of any kind belonging to the defendant, in his possession or custody, for the use of the plaintiff, or so much thereof as shall be sufficient to satisfy the debt and costs and all charges incident to levying the same; and all goods and effects whatsoever in the hands of the garnishee belonging to the defendant shall be liable to satisfy the plaintiff's judgment, and shall be delivered to the sheriff or other officer serving the attachment." The language thus employed clearly indicates the intention that any money due by the garnishee,

or goods in his hands belonging to the debtor at the time of appearance and answer, shall be applied in satisfaction of the debt. 1 Am. & Eng. Ency. of Law (1 Ed.), pp. 1150, 1151, 1165. It does not appear in this case how or when the salary was to be paid. It is admitted, however, that an amount more than sufficient to pay the plaintiff's claim was due at the time of filing the answer, and judgment was rendered only for the amount of the defendant's indebtedness to the plaintiff.

We come now to the consideration of the defendant's fourth exception, which involves important questions not at all free from difficulty. For the purpose of determining whether any one of the defendant's contentions under the fourth exception is well founded, we may admit the general rule that a garnishment is in effect a suit by the principal debtor, the defendant in the action, in the name of the plaintiff, and for his use and benefit, against the garnishee to recover the debt due to the plaintiff's debtor and apply it to the satisfaction of the plaintiff's demand. It would appear to be a necessary corollary from the proposition, thus stated, that the plaintiff in the garnishment is in his relation to the garnishee substituted merely to the rights of his own debtor and can enforce no claim against the garnishee which the debtor himself, if suing, would not be entitled to recover. Shinn, sec. 487; *Myer v. Ins. Co.,* 41 Md., 595; *Brause v. Ins. Co.,* 21 Wis., 509. The garnishee can be placed in no worse position by reason of the garnishment than he occupied as a debtor to the defendant, nor subjected to any greater liability. This is a just and reasonable doctrine, but it does not by any means sustain the objections of the defendant. It seems to be conceded that if the creditor of the garnishee can sue the latter in this State, then the plaintiff can proceed here against the garnishee. That the garnishee, the tobacco company, although a corporation having its domicile of origin in New Jersey, was amenable to process such as issued in this case is too well settled to be now

an open question. We are speaking now of the service of process and not of jurisdiction. It is found as a fact that the company has complied with the laws of this State concerning foreign corporations, which means either that it had an agent in this State upon whom process could be served under the general law in all actions against it, or that it had complied with the provision of chapter 5, Acts 1901. As the tobacco company transacted business here by the favor or comity of this State, it was subject to the State's laws and to all of its reasonable rules and regulations regarding the service of process, and any judgment of a State court, having jurisdiction of the cause or of the subject of the action, is binding upon the company, at least in this State, the same as if it were a domestic corporation or an individual. The subject is fully discussed in *Fisher v. Ins. Co.*, 136 N. C., 217, decided at this term. See also *Railroad v. James*, 161 U. S., 545; *Railroad v. Trust Co.*, 174 U. S., 552; *Shields v. Ins. Co.*, 119 N. C., 380. While the company cannot be treated as a domestic corporation or as a distinct entity in this State, for the purpose of determining the jurisdiction of the Federal Courts, it may be so regarded in respect to its liability to be sued here and the jurisdiction of our courts over it, which extends to suits not only by residents of this State, but to those by residents of other States, who are equally entitled to be admitted to our courts to prosecute actions for the protection of their rights and the recovery of their property, in the absence of any law forbidding the same. The State may, it is true, exclude non-residents from our courts, if it sees fit to do so, without infringing the Constitution of the United States, which protects only citizens of a State against such discrimination by another State; but we do not think the principal defendant, who is the debtor of the plaintiff, has been denied the right to sue his debtor, the garnishee, in our courts by section 194 of The Code. It having been settled that a

foreign corporation exercising its franchises in this State may be subjected to the process of garnishment, when it holds property or credits of the debtor for which the latter can sue in our courts, and that the plaintiff in attachment as against the garnishee is subrogated to the rights, in that respect, of the debtor, and can recover only by the same right and to the same extent as the debtor could recover, if he were suing the garnishee, his debtor (*Myer v. Ins. Co., supra*), it must follow that the plaintiff may maintain his action and the garnishment proceedings as ancillary to it, unless he is precluded from doing so by section 194. That section provides that an action may be brought against a foreign corporation by a plaintiff not a resident of this State, when the cause of action shall have arisen or the subject of the action shall be situated within this State. It appears in this case that the terms of the contract between Claytor and the tobacco company were agreed upon in this State, and, while the services were performed by Claytor in Virginia, all checks for his salary or wages were drawn at and sent from Winston in this State; and it further appears that the tobacco company has no property in New Jersey, which by courtesy may be called its domicile of origin, and that the bulk of its property is in this State, which is actually its domicile by adoption. What a curious result would follow if we should hold that Claytor cannot sue the company in this State. We will force him to seek his debtor in New Jersey, but he will find no property there to satisfy his debt, and there is no good reason why he should be required to resort to the courts of any other State than New Jersey where there may happen to be some of the property of his debtor, but where the debtor has no domicile of any kind, and where the same law may exist as we have here; nor should he be required to first obtain judgment in New Jersey and then come here to sue upon it. A construction of our statute, with reference to the special facts of this

case, which would produce such an anomaly by requiring him to pursue any one of the courses indicated, should not be accepted as the true one, unless no other is admissible. The transactions out of which the cause of action of Claytor against the company arose occurred in this State and the debt due to him was as much payable here as it was in Virginia. For some purposes it may be important to determine precisely where a debt is payable or a contract is to be performed, but it is a well established general rule that "all debts are payable everywhere, unless there be some special limitation or provision in respect to the payment, the rule being that debts as such have no *locus* or *situs* but accompany the creditor everywhere and authorize a demand upon the debtor everywhere." 2 Parsons Cont. (8 Ed.), 702. The contract between Claytor and the tobacco company contained no "special limitation or provision in respect to payment," and the debt growing out of it if not, by reason of the special circumstances of its creation, payable here (*Perry v. Transfer Co.,* 19 N. Y. Supp., 239), was payable generally, and could have been sued on by Claytor in this State and therefore was attachable here. "This is the principle and effect of the best considered cases—the inevitable effect from the nature of transitory actions and the purpose of foreign attachment laws if we would enforce that purpose." *Railroad v. Sturm,* 174 U. S., 710; Beale on Foreign Corp., sec. 284. Considering the special facts of this case, we find that the tobacco company obtained a charter in New Jersey for the avowed purpose of establishing its principal office and transacting its business in this State. It was born, it is true, in New Jersey, but it lives, moves and has its being in this State. It is nominally a corporation of the other State where it was originally created, but in reality has its home, its domicile, here. There is no valid or practical reason why this case should not be held to come substantially within the principle of *Sexton v. Insurance Co., supra,* and

*Boyd v. Insurance Co.,* 111 N. C., 372, and if that is the correct view the tobacco company cannot certainly be prejudiced in the least when it is required to pay its debts where it conducts its business and has all or the larger part of its assets. On the contrary, it will be to its advantage if it is required to pay where it has its assets rather than at the domicile of its origin where it has none, and where it performs none of its corporate functions. This case is clearly distinguishable from *Balk v. Harris,* 124 N. C., 468; 45 L. R. A., 257; 70 Am. L. & Rep., 606, and *Strause v. Ins. Co.,* 126 N. C., 223; 48 L. R. A., 452. The facts of this case and of those two cases are wholly different. It has been said that a corporation must dwell in the place of its creation and cannot migrate to another sovereignty (*Bank v. Earle,* 13 Pet., 588), but this *dictum* has been held to be nothing but a rhetorical statement of the perfectly obvious principle that a corporation, wherever it goes, is subject to the law of the State where it was created and cannot rid itself of the control of that State, nor can it disregard the restrictions of its charter which embodies the limitations of its legal existence and its corporate powers. It may, though, acquire a domicile or a residence in another State, and be subject to its laws to the same extent as if it had been fully domesticated there. Murfree on For. Corp., secs. 8 and 9. Our conclusion on this branch of the case is that the tobacco company was amenable to the process of our courts, both mesne and final; that the cause of action against it and in favor of Claytor arose in this State (*Steel v. Comrs.,* 70 N. C., 137), and that the subject of the action is situated here, that is, the debt due from the tobacco company to the defendant, the *res* as it is called (*Winfree v. Bagley,* 102 N. C., 515), which has been brought within the jurisdiction of the Court by service of the garnishment.

It was necessary to decide the question we have discussed before considering the defendant's last ground of objection,

because a decision for him on any one of those questions would have settled the case entirely in his favor.

The defendant further insists that his earnings for personal services at any time within sixty days next preceding the garnishment were exempt under section 493 of The Code. He admits that this exemption is allowed by that section in supplementary proceedings, but his counsel argue that it is intended by the law that such earnings shall in no way be condemned or applied to the payment of debts. The humane and beneficent provisions of the law in regard to exemptions, being remedial in their nature and founded upon a sound public policy, should always receive a liberal construction so as to embrace all persons coming fairly within their scope. Black Interp. of Law, 311. This Court has uniformly held that where property is exempted from seizure under final process it is similarly exempt from levy or seizure under any mesne process, issued for the purpose of placing it in the custody of the Court and thus preserving it until it can finally be applied to the satisfaction of the plaintiff's debt. *Chemical Co. v. Sloan,* 136 N. C., 122, at this term. Supplementary proceedings are in the nature of final process, when viewed either as a substitute for a creditor's bill to enforce the payment of a judgment at law or as a proceeding having the essential qualities of an equitable *fi. fa.,* and if the defendant comes within the general description of the persons designated in the act, there is no good reason for denying him the exemption under the garnishment. The homestead and personal property exemptions can be claimed only by residents of this State. But this is so by reason of the express words of our Constitution and laws. There is no such limitation in section 493, and we are unable to see why we should restrict its meaning so as to exclude the defendant from the benefit of its wise provisions, and thereby defeat the evident policy and benevolent purpose of the Legislature. We prefer to give the section a liberal

construction which will be apt to do justice and at the same time carry out the legislative intent, and which, too, will not be contrary to the letter of the law.

The defendant should be allowed his exemption out of his earnings in accordance with the provisions of section 493, and to this extent there was error in the judgment upon the case agreed.

We have discussed the case somewhat at length, as it involves questions of great and increasing importance and, it may be, of far reaching consequences.    It was unusually well presented on both sides by counsel in their briefs.

Error.