GEORGE T. GEORGIS, Respondent v. TH. GIOCALAS and Another, Copartners Doing Business under the Firm Name and Style of TH. GIOCALAS & V. COYIMZOGLU, Appellants.

First Department, February 8, 1929.

*Raymond B. Seymour* of counsel [*McNamara & Seymour*, attorneys], for the appellants.

*Bernard H. Sandler*, for the respondent.

MARTIN, J. On July 17, 1922, the defendants, merchants doing business in Basrah, on the Persian Gulf, Mesopotamia, employed the plaintiff for a period of three years to assist in the management of their business and to act as their agent in the United States and to render other services in their behalf.

The contract provided for payment to the plaintiff as compensation for such services the sum of $10,500 per annum; and for additional compensation if he complied with other terms of the contract which provided that " in consideration of the employee devoting his entire time and energy exclusively to the business of the employers and not to engage in any other business, and in consideration of the premises, the employers hereby expressly agree to pay 'said employee, in addition to the sum of $10,500 per year, as hereinbefore provided for, a certain percentage of the net profits of the business of the said employers, the amount of such percentage as well as all other terms and conditions regarding said net profits to be mutually agreed upon by the parties hereto."

It was also agreed that the plaintiff should be reimbursed for all moneys expended and all expenses incurred by him for and in their behalf. Thereafter and on or about the 28th day of July, 1925, and again on the 24th day of July, 1926, the contract was, by mutual consent, renewed for an additional period of one year. The plaintiff says the defendants failed to comply with the terms of the contract.

The original complaint demanded judgment for the sum of $131,112.86 based upon five causes of action, as follows: Salary for the contract period of three years at the rate of $10,500 per year,

$31,500; salary for two renewals of one year each of the original contract at $10,500 per year, $21,000; damages for wrongful discharge prior to the expiration of second renewal date (amount claimed here is included in the second cause of action); twenty per cent of the net profits of the defendants' business in the amount of $587,159.72, or $117,431.94; for expenses incurred and moneys expended by plaintiff on defendants' behalf, $73,653.84, making a total for the five causes of action of $243,585.78, less amount credited by plaintiff to the defendants as having been received on account of the above claims, $112,472.92, leaving the amount of judgment demanded the sum of $131,112.86.

The first, second and third causes of action are based upon the written contract, and demand merely the stipulated salary which the plaintiff was to receive thereunder.

The fourth cause of action first demanded twenty per cent of the net profits of the defendants' business during the term of the plaintiff's employment. It is now brought on *quantum meruit*, and demands the same percentage of the profits as fixing the reasonable value of the plaintiff's services. The contract between the parties provided for additional compensation to the plaintiff of a percentage of the net profits of the defendants' business, which said percentage was to be mutually agreed upon between the parties. The plaintiff in his complaint admits that the parties never agreed upon a fixed percentage of the profits but demands the sum of twenty per cent as being the fair and reasonable value of plaintiff's services.

On a motion to dismiss the fourth cause of action it was held (N. Y. L. J. May 5, 1928, p. 609) that if the plaintiff was entitled to recover he must do so on the theory of a *quantum meruit;* hence the amended complaint founded on that theory.

The fifth cause of action demands the amount of money represented by expenses incurred by the plaintiff for and on the defendants' behalf, to which he is entitled to reimbursement by the terms of the contract.

After this action was commenced, a warrant of attachment was granted upon the ground that the defendants were non-residents, residing in Basrah, on the Persian Gulf, Mesopotamia. There is no question upon this appeal with reference to the residence of the defendants, or as to the sufficiency of the averments of non-residence upon which the attachment was granted. Since this warrant of attachment was granted, the defendants have sought most vigorously to vacate or reduce the amount of the same. It has been subjected to four separate and distinct attacks and on each occasion the applications were denied and the warrant sustained.

The defendants' first appeal is taken from the order denying the

motion to modify the warrant of attachment made upon the original complaint and the papers submitted on the application for a warrant of attachment. The complaint was thereafter amended and the defendants again moved to reduce the amount of the warrant of attachment by the sum demanded in the fourth cause of action as set forth in the amended complaint, upon various grounds directed to the sufficiency of the amended complaint, and the papers upon which the warrant was granted. That application also was denied. The second appeal is taken by the defendants from the order of denial. The reason for the two appeals is that one motion was made on the first complaint and papers and one on the amended complaint. The complaint as now framed sets forth that the cause of action which is brought on an alleged *quantum meruit* is based upon the opinion of the plaintiff that twenty per cent of the profits is the fair and reasonable value of plaintiff's services. No agreement having been entered into fixing the amount of the profits plaintiff was entitled to receive, his recovery must be limited to the fair and reasonable value of his services. To sustain an attachment in such a case, it is necessary to set forth facts showing the services and the value thereof. Under the terms of the contract plaintiff must also show he devoted his entire time to the business of the defendants or allege facts showing a reason for his failure to do so, for it was provided that he was to receive his compensation only in case he devoted his entire time and energy exclusively to the business of his employers and did not engage in any other business. It does not appear in the moving papers that he did confine his services as agreed and in fact it was alleged by defendants that plaintiff was employed by another concern during this same period.

The attachment to the extent of $117,000 has been levied against the property of these defendants upon the theory that the plaintiff may be able to prove that said sum is the fair and reasonable value of his services. In addition to the fact that it nowhere appears just what these services were, the papers also fail to show any basis for any such value or any facts upon which any one could place a value thereon.

The plaintiff says that he fixed the fair and reasonable value of his services as follows: " I arrive at this said figure of 20% of the net profits as being fair and reasonable compensation for my services in the following manner: The basis of percentage compensation of salesmen in the business of the parties hereto is almost universally fixed at 3% of net sales. 3% of the net sales of the business is equivalent to 20% of the net profits and appears as follows: in the business of the defendants the general basis of computing profits is 15% and, therefore, inasmuch as 3% is one-fifth of 15%, I am

entitled to one-fifth of the net profits, or 20% thereof, as the fair and reasonable compensation."

In *Delafield* v. *Armsby Co.* (62 App. Div. 262) Presiding Justice VAN BRUNT, writing the opinion, said: " In an action upon a contract for the payment of a sum certain, it appears from the contract itself what the damages will be; but where the damages are unliquidated it is necessary for the plaintiff in his affidavit to set out the evidence which he claims proves his damages in order that the court may judge as to whether he has evidence of damage, and that his allegation of damage is not mere matter of speculation. * * * It should be borne in mind, in considering this proposition, that it is only within a comparatively limited period of time that it has been possible to issue an attachment in an action to recover unliquidated damages. Hence, it is the duty of the court to give fair construction to the provisions of the Code which properly require, before a man's property shall be taken in execution before judgment upon an unliquidated claim, that the papers shall contain evidence that the plaintiff has sustained the damages which he demands."

The mere fact that the plaintiff asserts that his services were worth $117,000 proves nothing, and is certainly not a sufficient reason for permitting an attachment for any such amount. (See *Dudley* v. *Armenia Insurance Co.*, 115 App. Div. 380; *Prentiss* v. *Greene*, 193 id. 672; *Sicklick* v. *Schasseur*, 221 id. 742.)

In *Southwell* v. *Kingsland* (85 App. Div. 384, 386) the court said: " The mere expression of plaintiff's opinion as to value, without corroboration, or any details as to the nature or extent of the labor and services performed, is insufficient."

In *Willson* v. *Lloyd* (210 App. Div. 96) this court said: " * * * the affidavit in support of the application for the attachment does not establish the claim by any further proof of sufficient quality to satisfy the rule that the cause of action must be shown to be one that may be substantiated. * * * Nor are the damages in the third cause of action made out with that accuracy of proof which ought to accompany an application to seize the defendant's property in a specified amount."

In *Barbrick* v. *Carrero* (184 App. Div. 160) this court stated: " Within the authorities the plaintiff has not shown with sufficient detail either the character of the service rendered or its value, in order to justify the granting of the warrant of attachment."

In *Calmon Asbestos & Rubber Works* v. *Asbest-Und-Gummiwerke* (141 App. Div. 198) the court held that the moving papers on an application for an attachment must set forth evidentiary facts from which the court may conclude that one of the causes of action

specified in section 635 of the Code of Civil Procedure (now section 902 of the Civil Practice Act) exists. Conclusions of fact appropriate to a pleading are not sufficient.

In *Wolfsohn Bros. Co.* v. *Lanzit* (141 App. Div. 420) it was held that on an application for an attachment the moving affidavit must state facts from which the amount of plaintiff's demand may be established.

The attachment has been granted upon papers containing a number of conclusions asserted by the plaintiff. He says he performed services of the value of approximately $117,000 but fails to show the services performed or to set forth facts upon which a value may be based or even estimated. He states he arrived at this value by taking twenty per cent of the profits, but does not allege any facts to indicate how he ascertained the profits.

If the courts should countenance any such procedure it would be a simple matter for a party to secure an attachment upon a claim wholly without merit, which might destroy the business of a defendant. If a plaintiff may attach merely upon his own statement that he performed services and his idea of the value thereof, the property of a non-resident would certainly be in danger.

We are of the opinion, therefore, that the orders should be reversed, with ten dollars costs and disbursements, and the motion to modify the warrant of attachment granted by reducing the amount thereof to $13,680.92.

DOWLING, P. J., FINCH, McAVOY and O'MALLEY, JJ., concur.

Orders reversed, with ten dollars costs and disbursements, and the motion to modify the warrant of attachment granted by reducing the amount thereof to $13,680.92.