Paul GITLIN, Plaintiff,

v.

Irving STONE and Jean Stone,
Defendants.

No. 66 Civ. 1662.

United States District Court
S. D. New York.

Jan. 11, 1967.

Law Offices of Arthur Richenthal, New York City, David Abrams, New York City, of counsel, for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn, New York City, David I. Goldblatt, New York City, of counsel, for defendants.

OPINION

MANSFIELD, District Judge.

By *ex parte* application pursuant to Rule 64 F.R.Civ.P., the plaintiff, a New York resident, procured the issuance of a warrant of attachment in the sum of $200,000 in this diversity suit for services as a literary agent against the defendants, who are residents of California. Count I seeks an accounting of sums to be received by the defendants under a contract with Doubleday which is alleged to have resulted from plaintiff's efforts pursuant to an agreement by the defendants to pay him 10% of amounts received by them from Doubleday. Count II asserts a *quantum meruit* claim for $200,000 as the fair and reasonable value of plaintiff's services in helping to negotiate the agreement between the defendants and Doubleday.

Defendants heretofore interposed a general denial of the essential allegations of the complaint and contested the Court's jurisdiction over them. They now move to vacate or modify the attachment order, pursuant to Rule 64, F.R. Civ.P. which makes available § 6223 of the New York C.P.L.R.

■ Defendants' contention that the attachment should be vacated entirely for the reason that they are now prepared to submit to the Court's *in personam* jurisdiction, is without merit. The attachment was not sought solely for the purpose of acquiring *quasi in rem* jurisdiction. It was also obtained pursuant to the provisions of § 6201, subdiv. 1, New York C.P.L.R., a remedy available under Rule 64 F.R.Civ.P., which authorizes an order of attachment "in any action * * * where the plaintiff * * * would be entitled * * * to a money judgment * * * when 1. the defendant is * * * not a resident or domiciliary". The personal appearance of a non-resident defendant does not require that an attachment procured pursuant to the provisions of the foregoing section be vacated or modified.

■ A review of plaintiff's *ex parte* application, however, in the light of the defendants' moving papers and their willingness to appear personally, reveals that plaintiff has failed to show that an attachment order in the amount of $200,000 is necessary to his security in the action and that the order should be modified to the sum of $50,000, provided the defendants personally appear. In considering defendants' motion to vacate, it must be remembered that under New York law an attachment is a drastic remedy, not to be granted merely upon conclusory allegations asserted in a pleading or affidavit. Mueller v. Rayon Consultants, Inc., 193 F.Supp. 650 (S.D.N.Y.1961); Georgis v. Giocalas, 225 App.Div. 577, 233 N.Y.S. 16 (1st Dept. 1929). The plaintiff must set forth evidentiary facts which would lead a reasonably prudent person to conclude that he has a valid claim entitling him to recover a definite amount of damages, which should not be a matter of speculation. American Swiss Potash Mining Corp. v. Brugger, Sup., 137 N.Y. S.2d 229 (N.Y. County 1954). In an action for an unliquidated sum of money, such as the present one, it is insufficient merely to state plaintiff's own opinion of the value of his services, as distinguished from evidence that would furnish a more specific basis for determining their value. Story v. Arthur, 35 Misc. 244, 71 N.Y.S. 776 (N.Y. County 1901); Valentine Dolls, Inc. v. MacMillan, 25 Misc.2d 551, 202 N.Y.S.2d 620 (Kings County 1960).

In seeking the order of attachment plaintiff asserted that he had entered into an oral agreement with the defendants entitling him to 10% of such sums as they might receive from Doubleday and that on March 14, 1966, he was "informed by the defendants" that they had entered into a contract with Doubleday entitling them to "a minimum guaranteed royalty of close to $1,500,000" plus other unspecified benefits. Plaintiff's contemporaneous correspondence with the defendant Stone, however, fails to indicate any such certainty about the amounts to be received by the defendants from Doubleday or the terms of plaintiff's arrangements with the defendants. On March 14 plaintiff wrote a letter to the defendant Irving Stone suggesting that it would "seem appropriate at this time to take up the subject of our fees in the matter", to which Stone replied by letter of March 16 that "We feel that your fee should be a modest one, consonant with the time you spent for us. * * * I suggest that you send us a bill." If plaintiff then had the 10% arrangement urged here as the basis for the attachment and if, as he now asserts, he had been informed on the same date (March 14) by the defendants that they were to receive minimum royalties of $1,500,000 from Doubleday, one would expect him to assert his 10% arrangement and bill accordingly, especially since a bill had just been requested by the defendants. Instead he wrote "I am prepared to suggest two approaches to the matter. One, that my fee be a lump sum, in which case I sug-

gest $50,000, to be paid in two annual payments. Since, no doubt, you have arranged for deferral payments, then, as an alternative, I would suggest that I receive 10% of each such payment."

The fact that neither party referred to any agreement between them for a 10% fee, which is the arrangement now alleged by plaintiff as a firm agreement, and that the plaintiff mentioned such a percentage only as a suggested alternative, after first suggesting a $50,000 fee to be paid in two installments, shed serious doubt on plaintiff's rather meager and anemic presentation of evidence supporting his *ex parte* application for the attachment order. His statement in the latter application to the effect that the reasonable value of his services is $200,-000 is similar in all respects to that found insufficient in Georgis v. Giocalas, supra, where the Court stated:

"The mere fact that the plaintiff asserts that his services were worth $117,000 proves nothing, and is certainly not a sufficient reason for permitting an attachment for any such amount. [Citing cases]" (225 App. Div. at 581, 233 N.Y.S. at 21).

A reduction in the amount of the attachment order is further warranted by the fact that the personal appearance of the defendants in the action will give the plaintiff the benefit, in the event of recovery, of an *in personam* judgment entitled to full faith and credit throughout the Union, including the State of California, where the defendants reside. The suggestion that because defendants have travelled in Europe and have apparently maintained a bank account in Switzerland, they might fail to satisfy a personal judgment against them, lacks adequate support. The Swiss bank account was apparently maintained because of business conducted in Europe and it is not contended that the defendants have no assets elsewhere in the United States. On the contrary, the complaint alleges that the Doubleday agreement probably provides for payment of annual installments of $150,000 a year (in lieu of $35,000 per year) for a period of 10 years. If plaintiff should obtain a judgment against defendants, later installments payable under the Doubleday agreement itself, which plaintiff relies upon in this action, would apparently provide adequate funds to satisfy it.

The order of attachment will accordingly be modified by reducing it to the sum of $50,000 upon the defendants' personal appearance in the action.

Settle order.