# CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY *v.* STURM.

## ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 236. Submitted April 5, 1899.— Decided May 22, 1899.

Sturm sued the railway company in a justices' court in Kansas for wages due, and recovered for the full amount claimed. The company appealed to the county district court. When the case was called there for trial, the company moved for a continuance on the ground that a creditor of Sturm had sued him in a court in Iowa, of which State the railway company was also a corporation, and had garnisheed the company there for the wages sought to be recovered in this suit, and had recovered a judgment there from which an appeal had been taken which was still pending. The motion for continuance was denied, the case proceeded to trial, and judgment was rendered for Sturm for the amount sued for, with costs. A new trial was moved for, on the ground, among others, that the decision was contrary to and in conflict with section 1, article IV, of the Constitution of the United States. The motion was denied, and the judgment was sustained by the Court of Appeals and by the Supreme Court of the State. The case was then brought here. *Held*, that the Iowa court had jurisdiction, and that the Kansas courts did not give to the proceedings in Iowa the faith and credit they had in Iowa, and were consequently entitled to in Kansas, and the judgment must be reversed.

The defendant in error brought an action against the plain-

tiff in error in a justices' court of Belleville, Republic County, Kansas, for the sum of $140, for wages due. Judgment was rendered for him in the sum of $140 and interest and costs.

The plaintiff in error appealed from the judgment to the district court of the county, to which court all the papers were transmitted, and the case docketed for trial.

On the 10th of October, 1894, the case was called for trial, when plaintiff in error filed a motion for continuance, supported by an affidavit affirming that on the 13th day of December, 1893, in the county of Pottawattomie and State of Iowa, one A. H. Willard commenced an action against E. H. Sturm in justices' court before Oride Vien, a justice of the peace for said county, to recover the sum of $78.63, with interest at the rate of ten per cent per annum, and at the same time sued out a writ of attachment and garnishment, and duly garnisheed the plaintiff in error, and at that time plaintiff in error was indebted to defendant in error in the sum of $77.17 for wages, being the same wages sought to be recovered in this action;

That plaintiff in error filed its answer, admitting such indebtedness;

That at the time of the commencement of said action in Pottawattomie County the defendant was a non-resident of the State of Iowa, and that service upon him was duly made by publication, and that afterwards judgment was rendered against him and plaintiff in error as garnishee for the sum of $76.16, and costs of suit amounting to $19, and from such judgment appealed to the district court of said county, where said action was then pending undetermined;

That the moneys sought to be recovered in this action are the same moneys sought to be recovered in the garnishment proceedings, and that under the laws of Iowa its courts had jurisdiction thereof, and that the said moneys were not at the time of the garnishment exempt from attachment, execution or garnishment; that the justice of the peace at all of the times of the proceedings was a duly qualified and acting justice, and that all the proceedings were commenced prior to the commencement of the present action, and that if the case

be continued until the next term of the court the action in Iowa will be determined and the rights of plaintiff in error protected.

The motion was denied, and the plaintiff in error pleaded in answer the same matters alleged in the affidavit for continuance, and attached to the answer a certified copy of the proceedings in the Iowa courts. It also alleged that it was a corporation duly organized under the laws of the States of Illinois and Iowa, doing business in the State of Kansas.

The defendant in error replied to the answer, and alleged that the amount due from plaintiff in error was for wages due for services rendered within three months next prior to the commencement of the action; that he was a resident, head of a family, and that the wages were exempt under the laws of Kansas, and not subject to garnishment proceedings; that plaintiff in error knew these facts, and that the Iowa court had no jurisdiction of his property or person.

Evidence was introduced in support of the issues, including certain sections of the laws of Iowa relating to service by publication, and to attachment and garnishment, and judgment was rendered for the defendant in error in the amount sued for.

A new trial was moved, on the ground, among others, that the "decision is contrary to and in conflict with section 1, article IV, of the Constitution of the United States."

The motion was denied.

On error to the Court of Appeals, and from thence to the Supreme Court, the judgment was affirmed, and the case was then brought here.

The defendant in error was notified of the suit against him in Iowa and of the proceedings in garnishment in time to have protected his rights.

The errors assigned present in various ways the contention that the Supreme Court of Kansas refused to give full faith and credit to the records and judicial proceedings of the courts of the State of Iowa, in violation of section 1, article IV, of the Constitution of the United States, and of the act of Congress entitled "An act to prescribe the mode in which the public acts, records and judicial proceedings in each State

shall be authenticated so as to take effect in every other State," approved May 26, 1790.

Mr. W. F. Evans and Mr. M. A. Low for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE McKENNA, after making the foregoing statement, delivered the opinion of the court.

How proceedings in garnishment may be availed of in defence — whether in abatement or bar of the suit on the debt attached or for a continuance of it or suspension of execution — the practice of the States of the Union is not uniform. But it is obvious and necessary justice that such proceedings should be allowed as a defence in some way.

In the pending suit plaintiff in error moved for a continuance, and not securing it pleaded the proceedings in garnishment in answer. Judgment, however, was rendered against it, and sustained by the Supreme Court, on the authority of *Missouri Pacific Railway Co.* v. *Sharitt*, 43 Kansas, 375, and " for the reasons stated by Mr. Justice Valentine in that case."

The facts of that case were as follows: The Missouri Pacific Railway Company was indebted to Sharitt for services performed in Kansas. Sharitt was indebted to one J. P. Stewart, a resident of Missouri. Stewart sued him in Missouri, and attached his wages in the hands of the railway company, and the latter answered in the suit in accordance with the order of garnishment on the 28th of July, 1887, admitting indebtedness, and on the 29th of September was ordered to pay its amount into court. On the 27th of July Sharitt brought an action in Kansas against the railway company to recover for his services, and the company in defence pleaded the garnishment and order of the Missouri court. The amount due Sharitt having been for wages, was exempt from attachment in Kansas. It was held that the garnishment was not a defence. The facts were similar therefore to those of the case at bar.

The ground of the opinion of Mr. Justice Valentine was

that the Missouri court had no jurisdiction because the *situs* of the debt was in Kansas. In other words, and to quote the language of the learned justice, "the *situs* of a debt is either with the owner thereof, or at his domicil; or where the debt is to be paid; and it cannot be subjected to a proceeding in garnishment anywhere else. . . . It is not the debtor who can carry or transfer or transport the property in a debt from one State or jurisdiction into another. The *situs* of the property in a debt can be changed only by the change of location of the creditor who is the owner thereof, or with his consent."

The primary proposition is that the *situs* of a debt is at the domicil of a creditor, or, to state it negatively, it is not at the domicil of the debtor.

The proposition is supported by some cases; it is opposed by others. Its error proceeds, as we conceive, from confounding debt and credit, rights and remedies. The right of a creditor and the obligation of a debtor are correlative but different things, and the law in adapting its remedies for or against either must regard that difference. Of this there are many illustrations, and a proper and accurate attention to it avoids misunderstanding. This court said by Mr. Justice Gray in *Wyman* v. *Halstead*, 109 U. S. 654, 656: "The general rule of law is well settled, that for the purpose of founding administration all simple contract debts are assets at the domicil of the debtor." And this is not because of defective title in the creditor or in his administrator, but because the policy of the State of the debtor requires it to protect home creditors. *Wilkins* v. *Ellett*, 9 Wall. 740; 108 U. S. 256. Debts cannot be assets at the domicil of the debtor if their locality is fixed at the domicil of the creditor, and if the policy of the State of the debtor can protect home creditors through administration proceedings, the same policy can protect home creditors through attachment proceedings.

For illustrations in matters of taxation, see *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Pullman's Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Savings and Loan Society* v. *Multnomah County*, 169 U. S. 421.

Our attachment laws had their origin in the custom of

London. Drake, § 1. Under it a debt was regarded as being where the debtor was, and questions of jurisdiction were settled on that regard. In *Andrews* v. *Clerke*, 1 Carth. 25, Lord Chief Justice Holt summarily decided such a question, and stated the practice under the custom of London. The report of the case is brief, and is as follows:

"Andrews levied a plaint in the Sheriff's Court in London and, upon the usual suggestion that one T. S. (the garnishee) was debtor to the defendant, a foreign attachment was awarded to attach that debt in the hands of T. S., which was accordingly done; and then a diletur was entered, which is in nature of an imparlance in that court.

"Afterwards T. S. (the garnishee) pleaded to the jurisdiction setting forth that the cause of debt due from him to the defendant Sir Robert Clerke, and the contract on which it was founded, did arise, and was made at H. in the county of Middlesex, *extra jurisdictionem curiæ ;* and this plea being overruled, it was now moved (in behalf of T. S., the garnishee,) for a prohibition to the sheriff's court aforesaid, suggesting the said matter, (viz.) that the cause of action did arise *extra jurisdictionem,* etc., but the prohibition was denied because the debt always follows the person of the debtor, and it is not material where it was contracted, especially as to this purpose of foreign attachments; for it was always the custom in London to attach debts upon bills of exchange, and goldsmith's notes, etc., if the goldsmith who gave the note on the person to whom the bill is directed, liveth within the city without any respect had to the place where the debt was contracted."

The idea of locality of things which may be said to be intangible is somewhat confusing, but if it be kept up the right of the creditor and the obligation of the debtor cannot have the same, unless debtor and creditor live in the same place. But we do not think it is necessary to resort to the idea at all or to give it important distinction. The essential service of foreign attachment laws is to reach and arrest the payment of what is due and might be paid to a non-resident to the defeat of his creditors. To do it he must go to the

domicil of his debtor, and can only do it under the laws and procedure in force there. This is a legal necessity, and considerations of *situs* are somewhat artificial. If not artificial, whatever of substance there is must be with the debtor. He and he only has something in his hands. That something is the *res*, and gives character to the action as one in the nature of a proceeding *in rem*. *Mooney* v. *Buford & George Mfg. Co.*, 72 Fed. Rep. 32; Conflict of Laws, § 549, and notes.

To ignore this is to give immunity to debts owed to nonresident creditors from attachment by their creditors, and to deny necessary remedies. A debt may be as valuable as tangible things. It is not capable of manual seizure, as they are, but no more than they can it be appropriated by attachment without process and the power to execute the process. A notice to the debtor must be given, and can only be given and enforced where he is. This, as we have already said, is a necessity, and it cannot be evaded by the insistence upon fictions or refinements about *situs* or the rights of the creditor. Of course, the debt is the property of the creditor, and because it is, the law seeks to subject it, as it does other property, to the payment of *his* creditors. If it can be done in any other way than by process against and jurisdiction of his debtor, that way does not occur to us.

Besides the proposition which we have discussed there are involved in the decision of the *Sharitt case* the propositions that a debt may have a *situs* where it is payable, and that it cannot be made migratory by the debtor. The latter was probably expressed as a consequence of the primary proposition and does not require separate consideration. Besides there is no fact of change of domicil in the case. The plaintiff in error was not temporarily in Iowa. It was an Iowa corporation and a resident of the State, and was such at the time the debt sued on was contracted, and we are not concerned to inquire whether the cases which decide that a debtor temporarily in a State cannot be garnisheed there, are or are not justified by principle.

The proposition that the *situs* of a debt is where it is to be paid, is indefinite. " All debts are payable everywhere, un-

less there be some special limitation or provision in respect to the payment; the rule being that debts as such have no *locus* or *situs*, but accompany the creditor everywhere, and authorize a demand upon the debtor everywhere." 2 Parsons on Contracts, 8th edition, 702. The debt involved in the pending case had no "special limitation or provision in respect to payment." It was payable generally and could have been sued on in Iowa, and therefore was attachable in Iowa. This is the principle and effect of the best considered cases — the inevitable effect from the nature of transitory actions and the purpose of foreign attachment laws if we would enforce that purpose. *Embree v. Hanna*, 5 Johns. 101; *Hull v. Blake*, 13 Mass. 153; *Blake v. Williams*, 6 Pick. 286; *Harwell v. Sharp*, 85 Georgia, 124; *Harvey v. Great Northern Railway Co.*, 50 Minnesota, 405; *Mahany v. Kephart*, 15 W. Va. 609; *Leiber v. Railroad Co.*, 49 Iowa, 688; *National Fire Ins. Co. v. Chambers*, 53 N. J. Eq. 468; *Holland v. Mobile & Ohio Railroad*, 84 Tenn. 414; *Pomeroy v. Rand, McNally & Co.*, 157 Illinois, 176; *Berry Bros. v. Nelson, Davis & Co.*, 77 Texas, 191; *Weyth Hardware Co. v. Lang*, 127 Missouri, 242; *Howland v. Chicago, Rock Island &c. Railway*, 134 Missouri, 474.

Mr. Justice Valentine also expressed the view that "if a debt is exempt from a judicial process in the State where it is created, the exemption will follow the debt as an incident thereto into any other State or jurisdiction into which the debt may be supposed to be carried." For this he cites some cases.

It is not clear whether the learned justice considered that the doctrine affected the jurisdiction of the Iowa courts or was but an incident of the law of *situs* as expressed by him. If the latter, it has been answered by what we have already said. If the former, it cannot be sustained. It may have been error for the Iowa court to have ruled against the doctrine, but the error did not destroy jurisdiction. 134 Missouri, 474.

But we do not assent to the proposition. Exemption laws are not a part of the contract; they are part of the remedy and subject to the law of the forum. Freeman on Executions, sec. 209, and cases cited; also *Mineral Point Railroad v.*

*Barron*, 83 Illinois, 365; *Carson* v. *Railway Co.*, 88 Tennessee, 646; *Couley* v. *Chilcote*, 25 Ohio St. 320; *Albrecht* v. *Treitschke*, 17 Nebraska, 205; *O'Connor* v. *Walter*, 37 Nebraska, 267; *Chicago, Burlington &c. Railroad* v. *Moore*, 31 Nebraska, 629; *Moore* v. *Chicago, Rock Island &c. Railroad*, 43 Iowa, 385; *Broadstreet* v. *Clark, D. & C. M. & St. Paul Railroad, Garnishee*, 65 Iowa, 670; *Stevens* v. *Brown*, 5 West Virginia, 450. See also *Bank of United States* v. *Donnally*, 8 Pet. 361; *Wilcox* v. *Hunt*, 13 Pet. 378; *Townsend* v. *Jemison*, 9 How. 407; *Walworth* v. *Harris*, 129 U. S. 365; *Penfield* v. *Chesapeake, Ohio &c. Railroad*, 134 U. S. 351. As to the extent to which *lex fori* governs, see Conflict of Laws, 571 *et seq.*

There are cases for and cases against the proposition that it is the duty of a garnishee to notify the defendant, his creditor, of the pendency of the proceedings, and also to make the defence of exemption, or he will be precluded from claiming the proceedings in defence of an action against himself. We need not comment on the cases or reconcile them, as such notice was given and the defence was made. The plaintiff in error did all it could and submitted only to the demands of the law.

In *Broadstreet* v. *Clark*, 65 Iowa, 670, the Supreme Court of the State decided that exemption laws pertained to the remedy and were not a defence in that State. This ruling is repeated in *Willard* v. *Sturm*, 98 Iowa, 555, and applied to the proceedings in garnishment now under review.

It follows from these views that the Iowa court had jurisdiction, and that the Kansas courts did not give to the proceedings in Iowa the faith and credit they had there, and were hence entitled to in Kansas.

*The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.*