SWISS BANK CORPORATION, Appellant, *v.* MEHDI EATESSAMI, Respondent.

First Department, October 25, 1966.

*Bernard J. Reverdin* of counsel (*Winslow M. Lovejoy* with him on the brief; *Lovejoy, Wasson, Huppuch & Lundgren,* attorneys), for appellant.

*Edwin M. Reiskind* of counsel (*Edwin M. Reiskind, Jr.,* with him on the brief; *Friend & Reiskind,* attorneys), for respondent.

STEVENS, J. This is an action to recover damages sustained by plaintiff as a result of defendant's alleged fraud in causing loans to be made by plaintiff upon a pledge of counterfeit securities. The complaint contains an additional cause of action on unpaid loans.

An order of attachment was obtained by plaintiff against certain property of defendant, and thereafter a summons with

notice was duly personally served upon defendant in Israel, while such defendant was in legal custody.

In 1965 defendant moved to vacate the order of attachment and to dismiss the complaint. The matter was referred to a Special Referee to hear and report as to whether defendant in person or through an agent committed acts within the State of New York which would render him amenable to jurisdiction pursuant to CPLR 302. Pending the report, disposition of the motion was otherwise held in abeyance.

The Referee reported there was a failure of proof to sustain jurisdiction and defendant moved to confirm the report. Plaintiff cross-moved for leave to file an amended complaint, to file additional exhibits or, alternatively, to have the matter referred back to the Referee. The court received and considered the proposed exhibits and thereafter granted the defendant's motion to dismiss the complaint but did so without prejudice.

This appeal is from the order entered June 29, 1966, which vacated the order of attachment and dismissed the complaint.

In 1963 two separate loans of $165,000 and $135,000, respectively, were obtained from plaintiff on pledges of forged or counterfeit stock certificates. The method used in each instance was similar. One Abdullah Motlag opened an account with Swiss Bank Corporation, Geneva, listing in the application as "identity papers produced" at Manufacturers Hanover Trust Company passport M. C3-349902 issued in Iran. On April 29, 1963, he wrote a letter from New York to plaintiff in Geneva enclosing purported stocks of American corporations registered in the name " Abdullah Motlag " to be held in his account. On May 17, 1963, Motlag requested a loan against the securities, and on June 4, 1963, $165,000 was cabled to Manufacturers Hanover Trust Company in New York for account of Motlag.

On July 30, 1963, plaintiff acknowledged receipt to " Balestra Finance Corp. & Mortgages ", Montreal, Canada, of certain purported stock certificates registered in the name of Motlag. In August, 1963, at Motlag's request a loan of $135,000 against these securities was sent to Motlag's account at Chemical Bank New York Trust Company, and the receipt of same acknowledged by Motlag. Various communications in connection with the transactions were written in and mailed from New York.

On September 23, 1963, Motlag, by letter to plaintiff, introduced his " colleague and good friend Mr. Abdulrahim Mottagi " " a very trustworthy person." Mottagi on a letterhead with the address 154 Nassau Street, New York, on September 26, 1963, referred to Motlag's letter, requested information about opening an account and also about obtaining a loan on secur-

ities. Plaintiff suggested the securities be sent to its New York office. This was not done though Mottagi did open an account with Swiss Bank Corporation, Zurich, and mailed purported stock certificates to it.

Coincidental with Mottagi's writing to plaintiff he wrote also to another bank in Zurich seeking similar information and subsequently sent purported stock certificates to such bank from "Balestra Finance Corp. & Mortgages", Montreal, Canada. These certificates were subsequently returned to Balestra at Mottagi's direction when he learned such certificates would be returned to New York to be indorsed by him.

Plaintiff claims that defendant masterminded the fraudulent schemes and received the benefits, or major portion of the proceeds. In support of its position it submits a statement taken from Kamyar in Israel by an Israeli and a Swiss police officer and initialed by them, though Kamyar refused to sign it after stating it was true. In the statement Kamyar, using the name Motlag, states he acted for defendant in obtaining the first loan and turned over the proceeds to defendant.

An affidavit was obtained from Khani in which he stated that in September and October, 1963, at defendant's request, he signed letters in New York under the name of "Mottagi." These letters were letters of inquiry in connection with the opening of the Swiss bank accounts and loans against securities. Khani stated defendant gave him forged passport No. 349902, purportedly then issued to "Mottagi" in which Khani's photograph was inserted and which was later used by Khani in registering at a Zurich hotel. Khani also used money obtained from defendant in opening a bank account in New York.

The single question is whether there is sufficient proof of tortious acts committed within the State of New York in furtherance of the swindle so as to confer jurisdiction pursuant to CPLR 302 and warrant denial of the motion to vacate the attachment.

CPLR 6201 sets forth the grounds upon which an attachment may issue. One of such grounds is fraud, the basis of the present action, and plaintiff is required to show it has a cause of action on such ground (CPLR 6212). However, "the jurisdiction to grant an attachment does not, we think, involve a preliminary determination by the officer to whom application for the writ is made, whether in law the case presented by the complaint will entitle plaintiff to the relief he asks. It is sufficient to authorize him to grant the writ that it appears that the action is brought for one of the causes where attachment may issue, and the other facts are shown which authorize the process to

be issued" (*Van Camp* v. *Searle,* 147 N. Y. 150, 161). The "sworn information must have some probative force and not rest upon hearsay alone" (*Brandly* v. *American Butter Co.,* 130 App. Div. 410, 411) and "shall be such that a person of reasonable prudence would be willing to accept and act upon it" (*Buell* v. *Van Camp,* 119 N. Y. 160, 165). While there must be a sufficient showing that the ultimate facts stated in the pleading can be substantiated (*Miller Bros. Constr. Co.* v. *Thew Shovel Co.,* 248 App. Div. 150) the truth of the facts stated may be assumed (*United States* v. *Brown,* 247 N. Y. 211, 217) and "plaintiff must be given the benefit of all legitimate inferences and deductions that can be made from the facts stated (*Ecco High Frequency Corp.* v. *Amtorg Trading Corp.,* 81 N. Y. S. 2d 610; *Bendure* v. *Bidwell,* 82 Misc. 33), although evidentiary facts making out a prima facie case must still be shown. (*Georgis* v. *Giocalas,* 225 App. Div. 577.) " (*Public Administrator of N. Y. County* v. *Gallo,* 20 Misc 2d 388, 389, affd. 9 A D 2d 884; 7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 6223.11.)

The foregoing are the principles generally applicable. In addition to the earlier factual statement and certain exhibits earlier referred to, plaintiff in support of the attachment and its claim has submitted numerous affidavits from various individuals all tending to indicate how the fraud was committed and what acts occurred within the State in furtherance thereof. An affidavit from Laperrouza, Inspector of Police of the Canton of Geneva, Switzerland, one of the officers to whom Kamyar made his statement, is submitted as is a copy of the Kamyar statement, initialed or signed by Inspector Saporta of the Tel Aviv police, the officer who recorded the statement.

Plaintiff recited in its affidavits certain allegations based on information and belief, the source of such information being identified in certain instances as the Laperrouza affidavits. The objection that such statements are hearsay and should not be considered is rejected. "It is not necessary to the validity of an attachment that the individual upon whose affidavit the application for the warrant is made shall personally know all the facts required to be stated. He may state them upon information and belief, but that information and belief must be competently derived. (*Murphy* v. *Jack,* 142 N. Y. 215.) " (*Hawkins* v. *Pakas,* 39 App. Div. 506, 507–508.) The sources of such hearsay evidence must be so disclosed that the Judge may determine if the belief is well founded, the information competently derived and has such probative force as to justify the issuance of the warrant

(*Gumbes* v. *Hicks*, 116 App. Div. 120; cf. *Zenith Bathing Pavilion* v. *Fair Oaks S. S. Corp.*, 240 N. Y. 307; *Brandly* v. *American Butter Co.*, 130 App. Div. 410; *Buell* v. *Van Camp*, 119 N. Y. 160; 7 Weinstein-Korn-Miller, N. Y. Prac., par. 6212.06). A deposition of a third person taken in a foreign State and authenticated by a foreign notary, as was Laperrouza's statement, while insufficient as an affidavit, may properly be considered by the court when stated by the plaintiff in an affidavit made by him to be the source from which the plaintiff derived his information and belief (*Hawkins* v. *Pakas*, 39 App. Div. 506, 507).

There can be little doubt that Laperrouza and Saporta by reason of their status may properly be considered as competent sources of information. A similar observation is applicable to Moore (the stenographer who typed the '' Motlag '' letters) Adamko (Manufacturers Hanover Trust Company official where '' Motlag '' opened his account), and Meyer (American Express Company employee who accompanied '' Motlag '' or defendant to Chemical Bank New York Trust Company to have a check certified, presumably against a part of the swindled proceeds) affidavits. Additionally, it is shown that in each instance the forged passport used in the swindle was given by defendant first to '' Motlag '' and then to '' Mottagi.'' The certificates involved in the swindle and in the attempted Mottagi swindle of the Zurich bank supposedly represented stock issued by the same corporations, and a definite connection was shown between '' Balistra '' of Montreal and '' Motlag '', as well as '' Mottagi.''

Sufficient is shown preliminarily to establish reasonable grounds for believing plaintiff on a trial can establish the fraud claimed and that torts were committed in this State in furtherance thereof (see 1 Weinstein-Korn-Miller, N. Y. Prac., par. 302.09). Discretionary judgment should be exercised to deny the motion to vacate and also permit the service of an amended complaint. '' Doubt is not fatal as a matter of law to the existence of an attachment any more than it is fatal to the validity of a judgment, for neither at one stage nor at the other is a cause of action to be established to the point of demonstration '' (*Zenith Bathing Pavilion* v. *Fair Oaks S. S. Corp.*, 240 N. Y. 307, 313).

The order appealed from should be reversed on the law and the facts, with costs and disbursements to appellant, and the motion to vacate the attachment denied, with leave to plaintiff-appellant in the exercise of discretion to serve an amended complaint.

BREITEL, J. P., RABIN, STEUER and CAPOZZOLI, JJ., concur.

292

Order, entered on June 28, 1966, unanimously reversed, on the law and the facts, with $50 costs and disbursements to appellant, and the motion to vacate the attachment denied, with leave to plaintiff-appellant in the exercise of discretion to serve an amended complaint.