Kenneth BARKER, Plaintiff,

v.

Richard Monroe SMITH and Graff Trucking Company, Inc., Defendants.

No. 68 Civ. 1656.

United States District Court
S. D. New York.

Sept. 18, 1968.

Quirk & Bakalor, New York City, for plaintiff.

Leahey & Johnson, New York City, for defendant Graff Trucking Company, Inc.

MANSFIELD, District Judge.

In this diversity suit for personal injuries arising out of an automobile collision, instituted by a New York resident against an individual and a Michigan corporation, neither subject to this Court's personal jurisdiction, the Michigan corporation, Graff Trucking Company, Inc., and a Michigan insurance company doing business in New York, Michigan Mutual Liability Company ("Mutual" herein), move to vacate an order of attachment upon Mutual's obligations as an insurer under a comprehensive automobile liability policy, to vacate the levy made thereunder, and to set aside service of the summons and complaint upon Graff. The principal question for decision is whether the Due Process Clause of the Fourteenth Amendment of the United States Constitution prevents the New York courts from exercising *quasi in rem* jurisdiction over a Michigan insured whose employee allegedly collided with a New York resident in Michigan. The *res* attached consisted of the obligations of the insurer, Mutual, under a liability policy written in Michigan to defend any suit for bodily injury under the policy and to pay on behalf of the insured damages caused by reason of such bodily injury.

According to the moving papers and related affidavits, on May 31, 1967, Kenneth Barker, a New York resident, while stopped at a red light at the Raisin River Bridge in Palmyra, Michigan, was rammed from behind by a tractor trailer, owned and driven by one Smith. As a result, Barker sustained a herniated disc.

At the scene of the accident, Smith told Barker that he was employed by Graff, a Michigan corporation that operates vehicles in Illinois, Iowa, Kentucky, Michigan, Missouri and Ohio, pursuant to a certificate issued by the Interstate Commerce Commission. However, Graff is not licensed to do business in New York and does not do any business in New York.

On April 25, 1967, Graff renewed its comprehensive automobile liability policy taken out with Mutual in Michigan, which obligated Mutual (1) to pay on Graff's behalf "all sums which [Graff] shall become legally obligated to pay as damages" because of bodily injury or property damage * * * arising out of the ownership, maintenance or use of any automobile; and (2) to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if the allegations of the suit are groundless, false or

fraudulent, but Mutual is not obligated to pay any claim or judgment or to defend any suit after the applicable limit of Mutual's liability has been exhausted by payment of judgments or settlements.

The policy further provided that "no action shall lie against the company [Mutual] unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial, or by written agreement of the insured, the claimant and the company."

Upon Barker's return to New York after the accident he underwent medical treatment for his injuries necessitating four days in the hospital, and at least two subsequent visits to his physician, with the possibility that surgery might be necessary in the future.

On March 13, 1968, Barker obtained an order of attachment in the Supreme Court of New York County upon Mutual's obligations under the policy. Mutual has an office within New York City, and is "doing business" within the state. Following the sheriff's levy on these obligations, on March 29, 1968 the action was commenced by out-of-state service of the summons and complaint upon Graff.

On April 23, 1968, the action was removed to this Court. On this motion counsel appearing specially on behalf of Mutual and Graff seeks to vacate the order of attachment and to dismiss the summons and complaint on the grounds that (1) Barker's affidavit that Smith told him at the scene of the accident that the latter was a Graff employee is insufficient under New York law to support the issuance of an order of attachment; (2) under state choice of law principles, the insurance policy was not a debt that could be attached to give this Court *quasi in rem* jurisdiction over Graff; and (3) New York could not, consistent with the Due Process Clause, rule that, on this fact pattern, the insurance policy is a debt located in New York.

The first contention is meritless. The fact that Barker's affidavit contains hearsay as to Smith's statement regarding his employment is insufficient to warrant vacating the order of attachment. As was recently said in Swiss Bank Corp. v. Eatessami, 26 A.D.2d 287, 273 N.Y.S.2d 935, 939 (1st Dept. 1966):

> " 'It is not necessary to the validity of an attachment that the individual upon whose affidavit the application for the warrant is made shall personally know all the facts required to be stated. He may state them upon information and belief, but that information must be competently derived. Murphy v. Jack et al., 142 N.Y. 215, 36 N.E. 882.' Hawkins v. Pakas, 39 App.Div. 506, 507–508, 57 N.Y.S. 317, 318. The sources of such hearsay evidence must be disclosed that the judge may determine if the belief is well founded, the information competently derived and has such probative force as to justify the issuance of the warrant."

In the *Swiss Bank* case, the agency relationship was held to be sufficiently supported for purposes of obtaining an order of attachment where plaintiff submitted an unsigned statement given by Kamyar, the alleged agent to Swiss and Israeli police officials, together with an affidavit from the Swiss police official that Kamyar made the statement to him. That case is on all fours with the present one in which Barker has filed an affidavit stating that Smith informed him at the scene of the accident that he was driving the tractor trailer while employed by Graff. To lend further support to the credibility of this information, if necessary, Barker's affidavit is undisputed. The Court therefore concludes that Barker has presented sufficient evidentiary facts to lead the Court to conclude, for purposes of this motion, that he has a valid claim. See Gitlin v. Stone, 262 F.Supp. 500 (S.D.N.Y.1967).

Turning to the next ground of attack, it is elementary that if Mutual's obligation under the policy consti-

tutes a "debt," then an attachable *res* exists in any jurisdiction wherein the debtor, i. e., Mutual, may be found. Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905). For this purpose, a state may rule that a corporate debtor is located in that state if it is doing business therein. See Curry v. McCanless, 307 U.S. 357, 366–371, 59 S.Ct. 900, 83 L.Ed. 1339 (1939); Chicago, R. I. & P. Ry. v. Sturm, 174 U.S. 710, 19 S.Ct. 797, 43 L.Ed. 1144 (1899); see Comment, Garnishment of Intangibles: Contingent Obligations and the Interstate Corporation, 67 Colum.L.Rev. 550, 562–571 (1967). And assuming presence of the debtor within the state, *quasi in rem* jurisdiction may be exercised over the creditor provided that there has been effective seizure and adequate notice to its owner. Pennoyer v. Neff, 95 U.S. 714, 722–723, 24 L.Ed. 565 (1878); Podolsky v. Devinney, 281 F.Supp. 488, 493 (S.D. N.Y.1968).

Graff and Mutual urge that the question of whether Mutual's obligations constitute a debt should be determined by Michigan (rather than New York) law, since they are Michigan corporations, the policy was written in Michigan, and the accident, forming the basis of Barker's claim, occurred in Michigan. Pointing out that neither Michigan law nor the policy here obligates the insurer to defend before *in personam* jurisdiction is acquired over the insured, that the insurance contract permits no action to be brought against the insurer (Mutual) until judgment against the insured (Graff) has been obtained, and that § 500.3006 of the Michigan Insurance Code of 1956 permits an action against the insured "in the nature of a writ of garnishment" only after execution, defendants argue that the Michigan courts, which have not passed on the question, would probably adopt the reasoning of Associate Judge Burke's dissent in Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966), and hold that no debt has come into existence for the reason that these conditions precedent have not occurred.

Even assuming that Michigan law as to the existence of an attachable debt might turn out to differ from that of New York as decided in Seider v. Roth, supra, this Court is not free to choose between the laws of the two states. In a diversity suit it must apply the law of New York, including its conflicts laws, as decided by its court of last resort, see Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), particularly where the question is one traditionally governed by local law, such as amenity of obligations to attachment, see Harris v. Balk, 198 U.S. 215, 222, 25 S.Ct. 625, 49 L.Ed. 1023 (1905); Chambers v. Blickle Ford Sales, Inc., 313 F.2d 252, 259 (2d Cir. 1963); Rule 4(e), F.R.Civ.P. A state is allowed to define the contractual obligations under a liability insurance policy without constitutionally interfering with the sovereignty of sister states, see Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), despite the fact that the contract is written beyond its borders and might be interpreted differently by a court of a sister state, so long as the state has a legitimate interest in the application of its policies and the activities within the state are neither too slight nor too casual to make application of its law inconsistent with due process. See Note, Direct-Action Statutes: Their Operational and Conflict-of-Law Problems, 74 Harv.L.Rev. 357, 387–392 (1960).

Applying the foregoing principles, it appears that New York's Court of Appeals would hold Mutual's contingent obligation, insofar as it exists in New York, to be an attachable debt, regardless of the decision of Michigan's highest court, and would treat the question as a procedural one, governed by the law of the forum, rather than a substantive one. Chambers v. Blickle Ford Sales, Inc., supra; Morris Plan Industrial Bank of New York v. Gunning, 295 N.Y. 324, 67 N.E.2d 510 (1946).

"The general rule is that questions of garnishment and attachment are decided by the law of the forum since they deal with remedies, 3 Beale on Conflict of Laws, pp. 1604, 1605; Restatement of Conflict of Laws, § 590, also § 600, see Chicago, Rock Island & P. Railway v. Sturm, 174 U.S. 710, 717, 718, 19 S.Ct. 797, 43 L.Ed. 1144. Therefore, the Pennsylvania law forbidding garnishment of wages has no effect in New York although the wages attached were earned in Pennsylvania." (67 N.E.2d at 513)

In Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966), a New York resident sued for personal injuries caused by a Canadian driver, insured under a policy issued in Canada by a Connecticut insurer, arising out of an accident in Vermont. In holding that the insurer's obligation to defend constituted a debt subject to attachment in New York, the Court of Appeals looked to New York precedent, principally In re Riggle's Estate, 11 N.Y.2d 73, 226 N.Y.S. 2d 416, 181 N.E.2d 436 (1962). Accordingly, we must conclude that under New York law, Mutual's obligation to defend constitutes an attachable debt regardless whether it would be so considered by the Michigan courts.

There remains the question whether the attachment of Mutual's obligation to defend violates the Due Process Clause of the Fourteenth Amendment for the reason that it is fundamentally unfair in permitting a New York resident to obtain *quasi in rem* jurisdiction over an out-of-state defendant when Michigan, the state where the insurance contract was written, where the accident occurred, and where the corporate offices of the insurer and insured are located, has neither permitted the *Seider* attachment procedure nor authorized a direct action against the insured.

Assuming the existence of such a conflict between the policies of New York and Michigan, nothing in the Due Process Clause compels a state to subordinate its own principles to those of the state where the contract was executed and the accident occurred. The test is whether New York citizens have a sufficient interest in the policy under consideration to warrant the remedies afforded by it. Watson v. Employers Liability Assurance Corp., 348 U.S. 66 at 73, 75 S.Ct. 166, 99 L.Ed. 74 (1954). New York's interest in preventing its citizens injured on public highways (whether inside or outside its borders) from becoming its public charges or drains on the resources of their New York friends and relatives, is adequate to warrant its provision of effective remedies against the insurer, regardless of Michigan's policies. See Simpson v. Loehmann, 21 N.Y.2d 305, 313, 287 N.Y. S.2d 633, 639, 234 N.E.2d 669 (1967) (concurring opinion); Watson v. Employers Liability Assurance Corp., supra. The moving papers of Barker, a New York resident, demonstrate that significant medical treatment (four days in the hospital and two visits to his doctor) has already occurred in New York and that further treatment may be necessary in the future. Since these expenses as well as the pain suffered by Barker in New York are compensable under the policy, and Mutual is itself engaged in doing business in New York with its permission, "activities relating to the contract" have occurred in New York and provide sufficient contacts and a legitimate basis for enabling New York to treat Mutual's obligations under the policy as a debt subject to attachment. See Currie, The Constitution and the Choice of Law: Governmental Interests and the Judicial Function, 26 U.Chi.L.Rev. 9, 30–52 (1958). Furthermore, even though Michigan was the place of the contract and the accident, New York may suffer greater resulting loss because, as the state of plaintiff's residence, it may be called upon to provide welfare payments if Barker becomes incapacitated, and any recovery may lessen the degree to which Barker could become a public charge in New York. See N.Y. Social Service Law, McKinney's Consol.Laws, c. 55, §§ 104 and 360; Snell v. Wyman, 281 F.Supp. 853 (S.D.N.Y.1968). In Alaska Packers

Ass'n v. Industrial Accident Comm., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935), the Supreme Court recognized California's interest in regulating the employer-employee relationship of alien migratory workers who contract in California to work in Alaska. Under any rational framework, see Atkinson v. Superior Court, 49 Cal.2d 338, 316 P.2d 960–964–965, cert. denied, 357 U.S. 569, 78 S.Ct. 1381, 2 L.Ed.2d 1546 (1959), the state of residence would *a fortiori* have an interest in protecting its citizens.

The truth of the matter is that New York's policy is not as drastic as it first appears. In actual practice the insurer, Mutual, would be in control of any litigation against its insured arising out of the accident, whether instituted in Michigan or New York. As the Court of Appeals pointed out in *Simpson:*

> "[I]t is in full control of the litigation; it selects the defendant's attorneys; it decides if and when to settle; and it makes all procedural decisions in connection with the litigation." 21 N.Y.2d at 311, 287 N.Y.S.2d at 637, 234 N.E. 2d at 672.

Furthermore, inconvenience or hardship to the parties or their witnesses resulting from their having to litigate here rather than in Michigan or elsewhere may be alleviated by way of a motion for a change of venue pursuant to 28 U.S.C. § 1404.

The Court therefore concludes that New York has the power and sovereignty to determine that Mutual's obligations under the liability insurance contract arise at the time of the accident, see Seider v. Roth, 17 N.Y.2d 111, 113, 269 N.Y.S.2d 99, 101, 216 N.E.2d 312 (1966), even though Michigan may not have reached an identical result.

The foregoing is not intended to resolve a constitutional question not presented by the parties, which remains as an aftermath of the decisions of this Court in Podolsky v. Devinney, 281 F. Supp. 488 (S.D.N.Y.1968), and the New York Court of Appeals upon reargument of Simpson v. Loehmann, supra. In *Podolsky,* Judge Croake found the *Seider* attachment proceeding to be violative of the Fourteenth Amendment for the reason that New York did not allow the insured to make a special appearance and to defend on the merits without subjecting himself to *in personam* jurisdiction and to the possibility of suffering a judgment beyond the policy's limits, N.Y. C.P.L.R. § 3201, and for the reason that the insurer would, in the event of the insured's default, become liable up to the limits of the policy without being afforded an opportunity to litigate the issue of liability, thereby depriving the insurer of property without due process. Following Judge Croake's decision, the New York Court of Appeals, upon reargument of Simpson v. Loehmann, 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E. 2d 319, held that if the insured were required to defend, *in personam* jurisdiction would not be expanded beyond the limits of the policy, stating: "there may not be any recovery against the defendant in this sort of case in an amount greater than the face value of such insurance policy even though he proceeds with the defense on the merits." Although the latter decision removed the principal ground relied upon by Judge Croake, there remains the risk that the insured (Graff) might, contrary to its obligations under the policy, refuse assistance to the insurer (Mutual). In such event, unless recovery were denied on the ground that the insured had failed to comply with the policy's terms, a default judgment might be entered entitling the plaintiff (Barker) to recover from Mutual even though the issue of liability was never litigated and the policy entitled Mutual to assert the insured's default as against it. See Podolsky v. Devinney, 281 F.Supp. 488, 499 (S.D. N.Y.1968); Manard v. Hardware Mutual Casualty Co., 12 A.D.2d 29, 207 N.Y.S.2d 807 (4th Dept. 1960), leave to appeal denied, 12 A.D.2d 891, 212 N.Y.S.2d 1020; Lauritano v. American Fidelity Fire Ins. Co., 3 A.D.2d 564, 162 N.Y.S.2d 553 (1st Dept. 1967), affd. without opinion, 4 N.Y.2d 1028, 177 N.Y.S.2d 530,

152 N.E.2d 546 (1958). Such a consequence would work a far greater hardship on Mutual than would adoption of a direct action statute permitting it to litigate the question of liability. See Note, Direct-Action Statutes: Their Operational and Conflict-of-Law Problems, 74 Harv.L.Rev. 357, 365–366 (1960). However, in the absence of an appropriate factual setting, the constitutionality of such a result need not be resolved at this stage.

For the foregoing reasons the motion to vacate the order to attachment, and the levy, and to set aside service of the summons is denied.

So ordered.