ESPINOSA, Judge*,
dissenting.
¶ 44 I respectfully dissent because, in my view, the majority has painstakingly built a straw man on the bleached bones of Harris v. Balk, and then knocked it down, without addressing what I believe is the true issue at hand. In doing so, the court avoids grappling with the key feature of the jurisdictional question presented: the implication of a relatively new species of intangible property that has no singular location. Contrary to the majority’s characterization, this type of property has virtually nothing in common with “a package” that a “courier, such as United Parcel Service or Federal Express,” *577 has agreed to deliver, thus, traditional, in-rem-jurisdiction analysis does not readily apply. The very term “electronic credit” illustrates the problem because it aptly describes the abstraction that is at the heart of the transactions and wire transfers involved here. If a Western Union wire transfer, which consists of electronic credits created by the payment of money at a sending location, cannot be found, in both a conceptual and practical sense, wherever Western Union does business and routinely pays out on such transfers, then it is nowhere to be found, because, in Western Union’s global, computerized accounting system, these electronic credits have no more “location” than does an e-mail message once the “send” button is clicked. The majority, however, sidesteps this modern reality, saying, “The technical complexities of the electronic age should not blind courts to the substance of transactions in conducting jurisdictional analyses.” Unfortunately, in my opinion, the majority has turned a blind eye to the true nature of the issue here.
¶ 45 As the majority acknowledges, intangible property does not have a clearly defined or easily ascertainable situs. See Hanson, 357 U.S. at 246-47, 78 S.Ct. 1228; Tabacalera Severiano Jorge, 392 F.2d at 714. In addressing this problem, the majority cogently summarizes portions of the evolution of jurisdiction jurisprudence and then focuses on Harris, stating that the issue here “rests squarely on the Harris fiction” and questioning whether it is analogous to this case. I agree that Harris is not applicable here, but for different reasons than those provided by the majority.
¶ 46 Initially distinguishing Harris as involving an “ordinary debt,” the majority points out that Western Union’s obligation is to the sender, who can cancel the obligation up until the time the money is paid to the recipient. But this is a distinction without a difference in terms of the location of Western Union’s electronic credits. Although a transaction may be subject to cancellation by the sender, absent such a presumably rare occurrence, Western Union has a contractual obligation to pay out the money being transferred. More importantly, Harris is not “apt” here because it held that quasi in rem jurisdiction could be premised on nothing-more than the transitory presence of a debt- or and his debt to an unrelated third party. That is the “mechanical rule” soundly rejected by the Supreme Court in World-Wide Volkswagen and Shaffer. 444 U.S. at 296, 100 S.Ct. 559, 433 U.S. at 208-09, 97 S.Ct. 2569. But, contrary to the implications of the majority opinion, the Court has never overruled or disavowed the underpinning of Harris — the common law doctrine that the legal situs of an intangible obligation is the situs of the obligor.[10] Rather, the Court has simply pointed out the due process problems with attempting to ground jurisdiction over individuals on nothing more than the theoretical location of a debt. See Shaffer, 433 U.S. at 209, 97 S.Ct. 2569 (“In such cases, if a direct assertion of personal jurisdiction over the defendant would violate the Constitution, it would seem that an indirect assertion of that jurisdiction should be equally impermis *578 sible.”); see also Rush, 444 U.S. at 328, 100 S.Ct. 571 (in rem jurisdiction may only be exercised when contacts “satisfy the fairness standard of International Shoe ”). It is clear the only thing the Court “interred” in Worldr-Wide Volksiuagen was “the mechanical rule that a creditor’s amenability to quasi in rem action travels with his debtor.” 444 U.S. at 296, 100 S.Ct. 559. Stated differently, what has been laid to rest is the use of the debt-follows-the-debtor doctrine as a substitute for due process and minimum contacts analysis when invoking in rem or quasi in rem jurisdiction.
¶ 47 In Shaffer, the Court noted:
“The Fourteenth Amendment did not, in guaranteeing due process of law, abridge the jurisdiction which a State possessed over property within its borders, regardless of the residence or presence of the owner. That jurisdiction extends alike to tangible and to intangible property. Indebtedness due from a resident to a nonresident of which bank deposits are an example is property within the State. Chicago, Rock Island & Pacific Ry. Co. v. Sturm, 174 U.S. 710, 19 S.Ct. 797, 43 L.Ed. 1144. It is, indeed, the species of property which courts of the several States have most frequently applied in satisfaction of the obligations of absent debtors. Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023.... [Gjarnishment or foreign attachment is a proceeding quasi in rem. Freeman v. Alderson, 119 U.S. 185, 187, 7 S.Ct. 165, 30 L.Ed. 372, 373. The thing belonging to the absent defendant is seized and applied to the satisfaction of his obligation. The Federal Constitution presents no obstacle 'to the full exercise of this power.”
433 U.S. at 211 n. 38, 97 S.Ct. 2569, quoting Pennington v. Fourth Nat’l Bank, 243 U.S. 269, 271, 37 S.Ct. 282, 61 L.Ed. 713 (1917); see also Burnham, 495 U.S. at 620, 110 S.Ct. 2105 (Shaffer stands for “nothing more than the proposition that when the ‘minimum contact’ that is a substitute for physical presence consists of property ownership it must, like other minimum contacts, be related to the litigation”).
¶ 48 I believe the majority’s failure to make this distinction essentially conflates presence, a necessary component of jurisdiction, and jurisdiction itself. That approach is useful in linking the property seizure at hand to the precipitous fall of Harris, but this only distracts from a realistic view of the nature and situs of the res at issue. See Dickstein v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 295 N.J.Super. 550, 685 A.2d 943, 948 & n. 5 (N.J.Super. Ct.App.Div. 1996) (question of state’s power to assert jurisdiction over trust account irrelevant to identifying account’s situs). Western Union contracts with senders to transmit — in actuality, to make available— specified funds to remote receivers. The resulting electronic credits are thus conceptually and pragmatically debts or obligations while on the books of Western Union before they are paid out. Cf. Universal Mktg. & Entm’t, Inc. v. Bank One of Ariz., N.A., 203 Ariz. 266, ¶ 7, 53 P.3d 191, 193 (App.2002) (money deposited in account creates debt bank owes customer). To say they are not only exalts form over substance. Whether specific obligations, in the form of electronic credits, are subject to Arizona forfeiture jurisdiction is a related but different issue that does not depend on the antiquated holding of Harris.
¶ 49 The majority’s assertion that my analysis “in reality relies in full force on [Harris’s ] outdated fiction” only compounds what I see as its needless fixation on that case, notwithstanding the State’s arguably making Harris the fulcrum of its jurisdiction arguments. No “fiction” at all is needed to see that, if an intended receiver of funds can go to any Western Union station and instantly receive the money, the funds must be at that location, both conceptually and physically. That the electronic credits are therefore present “in any place where Western Union maintains an office,” if that is congruent with any location where the funds can be disbursed, is simply a fact of this modern business practice that has nothing to do with Harris or the minimum contacts doctrine that overwrote its jurisdictional holding. The majority’s insistence to the contrary simply underlines its narrow view of the unique res at issue, and appears to overlook that the flaw in Harris is not its debt-follows-the- *579 debtor underpinning but the exercise of jurisdiction on that basis alone “without more.” Rush, 444 U.S. at 329, 100 S.Ct. 571. That is not the situation here.
¶ 50 At this point it is useful to revisit some of the underlying facts of this case, particularly those surrounding the deplorable business of human smuggling. After depositing human cargo at a “stash house” in Arizona, a “coyote” demands payment from the hostage’s relatives or sponsor in another state. The coyote directs those persons to send the required payment by Western Union wire transfer to a specified accomplice outside Arizona — in this case, at one of several northern Mexico border towns. The payment is made to a Western Union office either in person, by telephone, or over the Internet, and that office makes the specified sum of money available at the desired remote location. That location can be any one of thousands of similar locations throughout the nation, hemisphere, and, indeed, nearly the entire world. Although Western Union claimed otherwise before this court, in its own affidavit provided to both the trial court and the court of appeals, it stated:
Unlike many other money transmitters, Western Union’s money transfer service is provided on a “will call” basis, which means that the sender can identify the receiver of a transaction without having to specify the exact agent location at which the recipient will pick up the transferred funds. Instead, the receiver goes to any convenient Western Union agent location of his or her choosing. The agent uses a control number and other verifying information to identify the transmitted funds and then pays the receiver.[11]
¶ 51 No cash, currency, check, note, or bank draft of any sort is sent, transported, or routed through any geographic channels between the sender and receiver. Instead, an entry is keyed into the Western Union computer system, identifying the transaction and communicating to any and all other Western Union locations and remote agents authorization to pay to a designated receiver a specified amount of money under certain circumstances. Although typically a location is specified, one is not necessarily required. The payout readily can be made anywhere in the nation or world where Western Union maintains its branches or agents, and thousands of such transactions routinely occur daily. As noted above, the transmitted funds within Western Union’s system are referred to as “electronic credits,”[12] which, at bottom, are simply internal communications that Western Union relies on to make this unique type of business transaction possible and advantageous in a modern, Internet-era, global financial system. See Joseph H. Sommer, Where is a Bank Account? 57 Md. L.Rev. 1, 7 (1998) (modern financial transactions nothing more than communications).
¶ 52 The relevance of this real-world situation to the present legal issue is that, simply stated, electronic credits have no actual physical location once they are created in Western Union’s computer system. Instead, just like e-mail communications whose receipt is not limited to any particular location or computer, such electronic credits necessarily exist simultaneously in every place they can be instantly received. See Reno v. Am. Civil Liberties Union, 521 U.S. 844, 851, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (“cyberspace,” in which e-mail exists, is “a unique medium ... located in no particular geographical location but available to anyone, anywhere in the world”); Ashcroft v. Am. Civil Liberties Union, 535 U.S. 564, 590-91, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002) (Breyer, J., concurring) (describing impossibility of confining Internet to particular geographical areas); *580 see also Campbell Pet Co. v. Miale, 542 F.3d 879, 884 (Fed. Cir.2008) (Web site information available everywhere, not confined to discrete jurisdiction or exclusively located in any one place).
¶ 53 The majority points out that the logical implication of locating a debt anywhere the debtor can be found is that the electronic ei’edits are “simultaneously located in every state in which Western Union can be sued.”[13] It then reasons, “The Suprezne Court has squarely stated, however, that Shaffer ‘interred the mechanical rule that a creditoz’’s amenability to a quasi in rem action travels with his debtor,’ ” citing World-Wide Volksivagen, 444 U.S. at 296, 100 S.Ct. 559. But acknowledging that in rem jurisdiction cannot be premised solely on the situs of a debt does not explain why multijurisdictional situs is factually or legally untenable. See Tabacalera Severiano Jorge, 392 F.2d at 714-15 (acknowledging intangible property may have legal situs in multiple places). The notion that intangible electronic credits are present anywhere they can be redeemed is neither' outlandish nor troublesome, as the majority suggests. It relates only to the situs of the credits and does not, in the case of a company with multistate presence, automatically or “mechanically,” create jurisdiction in every state in which the credits can be said to exist. Cf. Rush, 444 U.S. at 329, 100 S.Ct. 571 (mere presence of State Farm’s obligation to insured, which can be said to exist in every state where State Farm does business, insufficient basis for in rem jurisdiction absent meaningful contacts with the forum state; insurance policy “not the subject matter of the case ... nor ... related to the operative facts of the ... action”).
¶ 54 After Shaffer and its progeny, not every state — indeed, perhaps no other state but Arizona — could exercise in rem jurisdiction over the property involved in this case. See Shaffer, 433 U.S. at 208-09, 97 S.Ct. 2569 (absent showing of additional ties supporting jurisdiction beyond mere presence of property in state, jurisdiction unconstitutional). Only Arizona can arguably satisfy the minimum contacts requirements of International Shoe and Shaffer because the wire-transferred payments are at the very heart of the litigation here. Although refraining from assigning a location to this res, the majority surmises it might be located either in the states in which the money transfers originated or in Colorado, Western Union’s state of incorporation. But to find that jurisdiction exists in those states would require application of the “mechanical rule” proscribed by Shaffer. If one accepts that Western Union’s ubiquitous electronic credits are somehow more authentically “present” in those states than in Arizona, the exercise of in rem jurisdiction in those forums would be problematic, if not flatly unconstitutional, because the intangible property would lack any meaningful contact with those jurisdictions. See id. at 208-09, 97 S.Ct. 2569 (where property within forum unrelated to cause of action, insufficient basis for jurisdiction).
¶ 55 Smugglers cross the border into Arizona, deposit their cargo in Arizona, demand or arrange for payment for their services while in Arizona, and hold the smuggled immigrants or drugs in Arizona until payment is received. The only facet of these particular enterprises occurring elsewhere is the initiation of payment from another state. This limited participation in the remote forum, involving relatively attenuated and sometimes innocuous conduct, would likely be insufficient to establish the requisite contacts to assert or sustain jurisdiction over the res in those states. See Helicopteros Nacionales, 466 U.S. at 418, 104 S.Ct. 1868 (“mere purchases” insufficient to satisfy minimum contacts standard of International Shoe). And, in the wake of Shaffer, Colorado’s exercise of jurisdiction over the res necessarily would be unconstitutional because it would rest solely on the presence of the intangible *581 property in Western Union’s state of incorporation. See Shaffer, 433 U.S. at 208-09, 97 S.Ct. 2569. Accordingly, the majority’s decision could effectively render the electronic credits generated by criminal conduct in our state legally untouchable; if Arizona may not assert jurisdiction over them, it is likely no state could.[14]
¶ 56 Although exercising jurisdiction over an intangible res violates due process when “the property which now serves as the basis for state-court jurisdiction is completely unrelated to the ... cause of action,” Shaffer, 433 U.S. at 209, 97 S.Ct. 2569, “when ...' the property itself [is] the source of the underlying controversy ..., it would be unusual for the State where the property is located not to have jurisdiction.” Id. at 207, 97 S.Ct. 2569. See also Cameco Indus., Inc. v. Mayatrac, S.A., 789 F.Supp. 200, 203-04 (D.Md.1992) (subjecting bank account to quasi in rem jurisdiction when property directly related to in-state activities); State of Oregon ex rel. Dep’t of Rev. v. Control Data Corp., 300 Or. 471, 713 P.2d 30, 31-32 (1986) (Shaffer not violated when state seeks to attach property of out-of-state party in care of instate third party). In this vein, an eminent jurist long ago observed:
The situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes, the domicile of the creditor; for others, the domicile or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, any place where the debtor can be found. At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions.
Severnoe Sec. Corp. v. London & Lancashire Ins. Co., 255 N.Y. 120, 123-24, 174 N.E. 299 (1931) (Cardozo, J.) (citations omitted). The unique intangible property here, while under the exclusive control of Western Union, is necessarily located at every Western Union office where it can be collected at will, including Western Union’s offices in Arizona— the forum directly connected to the litigation. The money underlying these electronic credits is payment for drugs or ransom for hostages being held and often abused in clandestine locations in Arizona. The state’s overriding interest in this money is the prevention of drug and human smuggling and the attendant violence, degradation, suffering, and economic harm such activities visit on Arizona’s communities. Interfering with the powerful financial incentives for committing these crimes is one of the most effective tools there can be. Thus, the property at issue is at the heart of the state’s mission in this action. And, if fairness is the touchstone of contemporary jurisdictional jurisprudence, see Rush, 444 U.S. at 328, 100 S.Ct. 571; Shaffer, 433 U.S. at 205, 97 S.Ct. 2569, it is without question fair and concordant with traditional notions of due process to anticipate that the transferred money— and, by extension, its owners — should be subject to the authority of this state’s courts, see Shaffer, 433 U.S. at 207, 97 S.Ct. 2569 (exercise of in rem jurisdiction is jurisdiction over property’s owner).
¶ 57 As the majority notes, “Courts must focus on reality, not fiction.” But the majority today avoids the real-world situation presented in this ease by applying traditional jurisdictional analysis and sidestepping the *582 novel issues created by evolving technology and ever-adapting criminal methodologies. In so doing, this court misses a compelling opportunity to appropriately advance the law in accord with changing societal needs. See id. at 202, 97 S.Ct. 2569 (social and technological change drives evolution of jurisdictional analysis); see also Burnham, 495 U.S. at 617, 110 S.Ct. 2105 (advances in technology, communications, and mobility have broadened scope of state court jurisdiction). Accordingly, I would uphold the jurisdictional ruling of the court of appeals and go on to address the Commerce Clause issue, which I believe was correctly decided as well.

 Vice Chief Justice Berch has recused herself from this case.' Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Philip G. Espinosa, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

. Case law from past to present acknowledges the proposition that a debt is located with the debtor. See, e.g., Chicago, R.I. & P. Ry. Co. v. Sturm, 174 U.S. 710, 716-17, 19 S.Ct. 797, 43 L.Ed. 1144 (1899) (debts accompany creditor everywhere and are payable everywhere); Af-Cap Inc. v. Republic of Congo, 383 F.3d 361, 371 (5th Cir.2004) (courts consistently hold situs of debt obligation is situs of obligor); Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A., 570 F.Supp. 870, 879 n. 9 (S.D.N.Y.1983) ("While ‘Shaffer clearly overruled Harris on its facts,’ '[t]he [Supreme] Court did not indicate total disapproval of Harris v. Balk, for it noted that attachment of a debt is proper wherever the debtor is found.’ ”) (internal citations omitted, alterations in Libra ); Long y. Baldt, 464 F.Supp. 269, 273 n. 3 (D.S.C.1979) ["[T]he Shaffer decision does not disturb the common law notion that the situs of the debt lies with the debtor.”); Barker v. Smith, 290 F.Supp. 709, 711-12 (S.D.N.Y.1968) (corporate debt located where corporation does business); In re World of English, N.V., 16 B.R. 817, 819 (Bankr.N.D.Ga.1982) (situs of account receivable is location of account debtor); Perez v. Chase Manhattan Bank, N.A., 61 N.Y.2d 460, 474 N.Y.S.2d 689, 463 N.E.2d 5, 8 n. 1 (1984) ("Although another aspect of Hairis v. Balk has been overruled, the debt-situs holding remains unimpaired.") (internal citations omitted); Beck v. Mfrs. Hanover Trust Co., 125 Misc.2d 771, 481 N.Y.S.2d 211, 216 (N.Y.Sup.Ct.1984) (debt follows debtor); Poston v. Poston, 161 Vt. 591, 657 A.2d 1076, 1078 (1993) (debt has situs in any state corporate debtor may be sued).

. No facts in the record demonstrate that this is not true for money transfers involving Mexico. And neither Western Union's "Dinero in Minutos" program information submitted below nor its sample consumer "SEND" form, which includes a full page of fine-print "Terms and Conditions” in both English and Spanish, advises senders the money can only be picked up in Mexico.

. This term is not unique to the business of money transfers and is commonly used in the banking industry as well. See, e.g., In re Ocean Petroleum, Inc., 252 B.R. 25, 29 (Bankr.E.D.N.Y.2000) (automated clearinghouses distribute and settle "electronic credits and debits among financial institutions"); Banque Worms v. BankAmerica Int’l, 77 N.Y.2d 362, 568 N.Y.S.2d 541, 570 N.E.2d 189, 194 (1991) (wire transfers process funds through wire payment systems).

. Although the majority quotes a passage from Rush in which the Supreme Court stated that the multijurisdictional situs of an intangible obligation "can have no jurisdictional significance," the implication of this language is not that multijurisdictional situs is impossible or improper. See Rush, 444 U.S. at 329-30, 100 S.Ct. 571. Rather, the Court was emphasizing that mere presence is not a factor establishing minimum contacts when the res exists in every state. See Shaffer, 433 U.S. at 209, 97 S.Ct. 2569 ("the presence of the defendant's property in a State might suggest the existence of other ties”).

. The majority deflects this concern, citing A.R.S. §§ 13-4302 and 13-2314(0) and suggesting Arizona could exert general in personam jurisdiction to prevent Western Union from distributing funds identified as proceeds of racketeering. But that precise theory was not raised or briefed by the parties and may not be a viable option. On its face, § 13-4302 authorizes in rem jurisdiction over "property ... within th[e] state” and expressly limits in personam, jurisdiction to an “owner of or interest holder in the property.” Section 13-2314(C) allows pre-liability orders only over property "subject to forfeiture” which presumably means as governed by § 13-4302. It would appear the state could never meet this burden with regard to Western Union's electronic credits because the majority denies both that they exist in Arizona and that Western Union is either an owner or an interest-holder of this property. See supra n. 2; see also Gravano, 204 Ariz. 106, ¶¶ 42-45, 60 P.3d at 257 (state could institute pre-liability forfeiture orders over book royalties when it had in personam jurisdiction over owner); State v. Henderson, 149 Ariz. 254, 256, 717 P.2d 933, 935 (App.1986) (denying jurisdictional challenge where plea agreement included forfeiture of out-of-state real property defendants owned at time of judgment).